United States District Court
Southern District of Texas

**ENTERED**

December 15, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VLADISLAV GRININ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-00259 |
| | § | |
| SECRETARY JEH CHARLES JOHNSON, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

HaloPolymer Trading filed an I-140 immigrant petition for the plaintiff, Vladislav Grinin, seeking to classify him as a multinational executive and allow him to remain in the United States as a permanent resident. The agency and the Administrative Appeals Office concluded that there was insufficient reliable evidence showing that Grinin met the statutory and regulatory requirements of an executive. Grinin challenges the ruling and moved for summary judgment on his claim that the agency and AAO erred. (Docket Entry No. 18). The government has responded and cross-moved for summary judgment, and Grinin has filed a reply. (Docket Entry Nos. 25, 26).

Based on careful review of the motions, response, and reply; the record; the arguments of counsel; and the relevant law, this court grants the government's motion for summary judgment and denies Grinin's cross-motion for summary judgment. The reasons are set out below.

**I.      Background[1]**

---

[1] The summary judgment evidence is the certified administrative record. (Docket Entry No. 16).

Grinin, a Russian citizen, worked for HaloPolymer Trading, Inc., a wholly owned subsidiary of OJSC HaloPolymer.  AR.523–24, 573.  OJSC HaloPolymer produces almost 10% of the world's supply of fluoropolymer products.  Grinin came to the United States in 2012 to begin HaloPolymer Trading's operations.  *Id.*  He was admitted to the United States in September 2012 as a nonimmigrant L-1A multinational executive, based on his position as president of HaloPolymer Trading.  AR.120.  This first visa was granted under the "new office" provision of 8 C.F.R. § 214.2(1)(3)(v), based on Grinin's role in opening HaloPolymer Trading's United States operations.  AR.120.  In July 2013, shortly before the visa was to expire, HaloPolymer Trading submitted a renewal application for Grinin as an L-1A multinational executive.  AR.120.  The renewal petition was granted, extending Grinin's L-1A status to August 31, 2015.  AR.80.

In May 2014, HaloPolymer Trading filed a Form I-140 petition seeking permanently to classify Grinin as an immigrant multinational executive.[2]  AR.113.  The United States Citizenship and Immigration Services, or "USCIS," reviewed the petition and requested additional evidence.  AR.960–69.  The request for evidence noted that the evidence of Grinin's daily job duties submitted with the petition contained discrepancies about the corporate structure and the number, identities, and jobs of HaloPolymer Trading's employees.  AR.962–64.  The request noted that the submitted materials did not substantiate the claim that Grinin's primary duties were executive.  AR.964.  The materials, for example, did not show that he was managing HaloPolymer Trading's employees in an executive role.  AR.964.

---

[2]  Corresponding I-485 petitions were filed for Grinin's family members.  AR.70.  Those petitions were denied because the underlying I-140 petition was denied.  *See id.*

2

HaloPolymer Trading filed a response to the agency's request for more evidence. AR.733–44. The response included, among other things, another organization chart showing three employees (including Grinin); separate departments for accounting, marketing, administration, and technical work; and an amended description of Grinin's job responsibilities. AR.737–39, 751–53.

The agency denied the I-140 petition on two grounds. AR.50–67. The agency found insufficient evidence showing that Grinin would function primarily in an executive capacity. AR.62–63. The agency also found that the record failed to show that in the three years before entering the United States, HaloPolymer Trading employed Grinin for one year as a multinational executive, as the statute required. AR.64.

In January 2015, HaloPolymer Trading appealed the denial to the Administrative Appeals Office, the AAO. AR.48. In August 2015, the appeal was dismissed. The AAO found that the agency had erred by finding that Grinin had not worked as a multinational executive for one year before the petition was filed. AR.11. The AAO affirmed the other basis for denying the petition, that it failed to provide enough reliable, probative evidence to show that Grinin would be employed in a qualifying executive capacity. AR.10. As noted in the request for additional evidence, the AAO found that the job description was vague. AR.5, 9. The agency had declined to consider a more detailed job description submitted in response to the request for evidence. The statute requires that a petition be "accompanied by a statement from an authorized official" of the petitioning employer. 8 C.F.R. § 204.5(j)(3)(i). This more detailed job description did not include information showing that the document preparer was an official authorized to do so. AR.9. The AAO considered a separate job description that identified the authorized official who prepared it through a signature. This job description was deficient because it merely repeated regulatory language, and because the

specifics it did provide were contradicted by other evidence.  *Id.*   For example, the description indicated that Grinin would hire a general manager and administrative manger during "his first year," but the record showed that he had hired neither more than two years later.  *Id.*  The AAO also noted other reasons to conclude that there was an insufficient basis to find executive status.  The petition showed that HaloPolymer Trading had contracted with its parent company, OJSC HaloPolymer, to perform management services.  As a result, Grinin was not performing this work, undermining the claim that his primary duties were executive.  *See* AR.9, 663–75.

Grinin filed this lawsuit seeking a declaration that his I-140 immigrant visa petition, and the corresponding I-485 petition, were improperly denied.  (Docket Entry No. 1).  After extensive briefing and oral argument at a hearing held on December 6, 2016, this court affirms the AAO's decision and grants the government's motion for summary judgment, denying Grinin's cross-motion.  The reasons are set out below.

## II.     The Motions for Summary Judgment

### A.      The Applicable Legal Standards

#### 1.      Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*,783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id*. (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only

a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding

a summary-judgment motion, the court draws all reasonable inferences in the light most favorable

to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*,

783 F.3d at 536.

When the parties cross-move for summary judgment, the court must review "each motion

independently, viewing the evidence and inferences in the light most favorable to the nonmoving

party."  *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 110 (5th Cir. 2010)

(alteration omitted) (quotation marks omitted).

### 2.      Review of Agency Determinations Under the Administrative Procedure Act

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an

appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "The

entire case on review is a question of law."  *Id.* (quotation marks omitted).  "Under the APA, it is

the role of the agency to resolve factual issues to arrive at a decision that is supported by the

administrative record, whereas 'the function of the district court is to determine whether or not as

a matter of law the evidence in the administrative record permitted the agency to make the decision

it did.'"  *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (quoting

*Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)).  "Summary judgment thus

serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by

the administrative record and otherwise consistent with the APA standard of review."  *Id.*

Agency action may be held unlawful and set aside only if found to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The

arbitrary and capricious standard is highly deferential."  *Knapp v. Dep't of Agric.*, 796 F.3d 445, 453

(5th Cir. 2015) (quotation marks omitted).  "Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made . . . ." *Id.* (quotation marks omitted).  Agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilson v. U.S. Dep't of Agric.*, 991 F.2d 1211, 1215 (5th Cir.1993) (quotation marks omitted).  "The agency decision need only have a rational basis, and it does not have to be a decision which the court would have made." *Id.*  In reviewing a challenge to the agency's decision, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Luminant Generation Co., LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) (alteration omitted) (quotation marks omitted).

"A denial by [the USCIS] of an application for a visa may be reversed only if the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Nat'l Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989) (citing 5 U.S.C. § 706(2)(a)). "It is well settled that the applicant for a visa bears the burden of establishing eligibility." *Id.*  The district court's role is to ensure that the USCIS engaged in "reasoned decision-making," while giving the agency "considerable deference in its interpretation of the governing statute." *Id.* (internal citations omitted).

### B.    Discussion

To obtain a multinational executive visa for a beneficiary, a petitioner must establish that the beneficiary came to the United States to be employed in an executive capacity.  8 U.S.C. § 1153(b)(1)(C).  The term "executive capacity" means an assignment in which the employee primarily:

> (i) directs the management of the organization or a major component or function of the organization;
> (ii) establishes the goals and policies of the organization, component, or function;
> (iii) exercises wide latitude in discretionary decision-making; and
> (iv) receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

*Id.* § 1101(a)(44)(B). "The petitioner must provide reliable evidence supporting the visa application." *Redeemed Christian Church of God v. United States Citizenship & Immigration Servs.*, No. CV H-13-2170, 2016 WL 3017135, at *11 (S.D. Tex. May 26, 2016). "[I]t is incumbent upon the petitioner to resolve [any] inconsistencies by independent objective evidence. Attempts to explain or reconcile [any] conflicting accounts, absent competent objective evidence pointing to where the truth, in fact, lies, will not suffice." *Id.* (quoting *In re Ho*, 19 I. & N. Dec. 582, 591 (BIA 1988)). The petitioner's proof must include "a statement from an authorized official of the petitioning United States employer" showing that the beneficiary is employed in an executive capacity. 8 C.F.R. § 204.5(j)(3)(i).

The AAO found that HaloPolymer Trading did not meet its burden to show that Grinin was primarily engaged in executive duties. *See* 8 C.F.R. § 204.5(j)(2), (j)(3)(i)(B), (j)(5); *see also* 8 U.S.C. § 1101(a)(44)(B); AR.8–10. Grinin attacks the factual underpinning of that determination by presenting another interpretation of the evidence submitted. But a "court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence." *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

Grinin contends that the AAO erred by "not giving full credence" to his claim that the he was relieved of non-managerial duties through the contractors HaloPolymer Trading employed.[3] Grinin

---

[3] The agency found that the petition did not show that HaloPolymer Trading employed independent contractors because HaloPolymer Trading did not claim "Cost of Labor" on IRS Form 1125-A or file a Form 1099 to show it paid its contractors in its 2013 tax return. AR.91–92. The AAO found the agency erred on

cites *Irish Dairy Board*, an unpublished decision that examined whether a petitioner who was the sole employee of a business could be classified as an executive of that business. No. A28-845-421 (AAO 1989). The AAO agreed with the proposition set out in *Irish Dairy Board* that a sole employee could be an executive if his or her primary function was to "plan, organize, direct and control an organization's major functions" through contractors. *Id.* The AAO acknowledged the "general point" of *Irish Dairy Board,* that "a reliance on contractors rather than employees does not inherently disqualify the petitioner" from showing executive status, but emphasized that "the petitioner must still establish the beneficiary's eligibility for the classification status." AR.8. The AAO noted that although Grinin contended that "the facts of the instant petition are analogous to those in the unpublished decision . . . [t]he record . . . [did] not contain copies of the evidence from the 1989 decision." AR.8. As a result, the petition did not support this contention by showing that the facts involved in the unpublished *Irish Dairy Board* decision were indeed factually similar to Grinin's case. AR.8. One way, but not the only way, to show the factual similarities would be by producing the administrative record from *Irish Dairy Board*. Grinin did not do so and did not provide any other basis to support his argument that the facts of *Irish Dairy Board* and his case were similar.

Grinin's reliance on the *Irish Dairy Board* decision to argue that the AAO erred is misplaced. Moreover, the AAO did not deny the petition because the evidence failed to show that Grinin relied on independent contractors. Rather, the AAO concluded the evidence failed to show that Grinin primarily performed executive responsibilities, rather than the day-to-day functions of the company,

---

this point because the record contained other evidence to show that HaloPolymer Trading relied on contractors. AR.8. "The issue of whether the petitioner properly reported the costs of these contractors on its income tax return is a question for the IRS, not USCIS." AR.8.

even considering the independent contractors.  AR.8–10.

Both the original petition and the response to the request for evidence included a description of Grinin's job duties, typed on HaloPolymer Trading's letterhead.  Those job descriptions included a percentage breakdown of how much time Grinin spent on specific tasks.  AR.532.  The description attached with the original I-140 petition described Grinin's job duties as follows:

> 1. Overall control and supervision of sales managers daily activities (setting up sales targets, regulating possible problems with the clients etc.)–30% (executive capacity)
>> - He will supervise all the managers and supervisors in general daily activities;
>> - He will guiding and directing the managers to the achievement of the Company's goals, in order to get excellent results in sales, marketing and in customer service;
>> - Receive input/ reports from subordinate managers upon which to base key sales and marketing decisions.
>> - Review and approve contracts with new clients
> 2. Supervising of accounting department in their daily activities–20% (executive capacity)
>> - He will direct and guide the accounting department in all of its activities. Some of the activities that he supervises are the costs, budget proposals, monthly revenues, monthly office expenses, and functions in financing and accounting results, correspondent sales and purchase orders issuing.
> 3. Communicating with the Head company, preparing reports and giving suggestions of further business improvements–20% (executive capacity)
>> - In consultation with the Head company, develops long-range goals and objectives of the company;
>> - To prepare and send weekly to the Board of Directors in Russia a Report with the results of his management and company sales and marketing achievements on the previous week.
> 4. R&D in the field of new projects in order to expand sales (possible JV with domestic US processing companies, accumulating suggestions regarding possible quality improvements etc.)–10%
> 5. Negotiating with key clients–10%
> 6. Will represent The Company before any Governmental Agency.–5%
> 7. Recruitment and training the staff: determines such human resources as are necessary, when hiring new personnel, takes part in their selection, hiring and training–5% (executive capacity).

AR.532 (errors in original).  In the request for evidence, the agency noted that this description was "based on a broad set of job responsibilities, which suggest a general sense of the beneficiary's heightened degree of discretionary authority, but fail to convey an understanding of the beneficiary's

duties on a daily basis."[4]  AR.961–62.

In response to the request, HaloPolymer Trading submitted this slightly modified job description:

1. Overall control and supervision of sales manager's daily activities (setting up sales targets, re[solving] possible problems with the clients etc.)–30% (Executive task)
   - []Supervis[ing] all the managers in their general daily activities-confirming the results of their negotiations with the clients, confirming price levels agreed with the customers by managers.
   - []Receiving input/ reports from subordinate managers[,] upon which to base key sales and marketing decisions.
   - Review[ing] and approv[ing] contracts with new clients
2. Supervising [the] accounting department in [its] daily activities–20% (Executive task)
   - [] Direct[ing] and guid[ing] the accounting department in all of its activities. Some of the activities that [are] supervise[d] are [] costs, budget proposals, monthly revenues, monthly office expenses, and [] financing and accounting results, correspondent sales[,] and purchase orders issuing.
3. Communications with the [h]ead company, preparing reports and giving suggestions for further business improvements–30% (Executive task)
   - In consultation with the [h]ead company, develop[ing] long-range goals and objectives of the company, such as, but not limited to, possible cooperation with U.S. companies to reprocess HaloPolymer's product in order to present better quality on the market and expand sales, projecting new plant in the U.S., based on [head] company's technologies.
   - Prepar[ing] and send[ing] weekly to the Board of Directors in Russia report[s] with the results of [beneficiary's] management and company sales and marketing achievements [for] the previous week.
5. Negotiating with key clients and participating in the industry's conferences–10%
6. Represent[ing] the [c]ompany before any [g]overnmental [a]gency.–5%
7. Recruitment and training [of] the staff: determin[ing] such human resources as are necessary [] when hiring new personnel, tak[ing] part in their selection, hiring[,] and training–5%.

AR.737–38,753.  As noted above, this revised job description did not identify any authorized official who prepared the document.  AR.9. (citing 8 C.F.R. § 204.5(j)(3)(i)).  Grinin contends that the regulation does not require an authorized official's signature, and the fact that the description was

---

⁴ The request for evidence also faulted this job description because it was endorsed by Grinin's attorney, not a company representative.  AR.962.  "The assertions of counsel do not constitute evidence." AR.962. (citing *Matter of Obaigbena*, 19 I&N Dec. 533, 534 (BIA 1988)).

on company letterhead "effectively meant that it had been prepared by an authorized party." (Docket Entry No. 20 at 23). This argument is unpersuasive. The regulation does not require a signature, but it does require "a statement from an authorized official of the petitioning United States employer" showing that the beneficiary is employed in an executive or managerial capacity. 8 C.F.R. § 204.5(j)(3)(i). The amended job description did not give any indication of who prepared the document. At oral argument on these motions, Grinin's counsel could not identify who prepared the document. The AAO did not err by declining to consider the job description that failed to identify who prepared the document.

Even if the AAO had considered the revised job description, the outcome would remain the same. The revised description is almost identical to the original job description that the request for evidence noted was insufficient. *Compare* AR.532 *with* AR.737–38. The revised document did not address the agency's concerns or provide significantly more specificity about Grinin's day-to-day duties. 8 C.F.R. § 204.5(j)(5) (requiring a detailed statement that "clearly describe[s] the duties to be performed by the alien" in a managerial or executive capacity); *see Republic of Transkei v. INS*, 923 F.2d 175, 177 (D.C. Cir. 1991) (the plaintiff "failed to document what proportion of [the beneficiary's] duties would be managerial/executive functions and what proportion would be non-managerial/non-executive")*; Khamisani v. Holder*, No. CIV.A. H-10-0728, 2011 WL 1232906, at *7 (S.D. Tex. Mar. 31, 2011) ("Absent specific information, general descriptions of business-related tasks are insufficient to comply with the implementing regulations and do not demonstrate that a beneficiary's proposed duties are primarily managerial or executive, as opposed to non-managerial."); *Shine's Ranch Corp. v. Ridge*, No. CA3:04-CV-2371-R, 2005 WL 1923595, at *3 (N.D. Tex. Aug. 10, 2005) (in failing to produce specific information of the proposed duties,

12

"the Plaintiff was unable to prove that the duties were mostly managerial or executive"); *IKEA U.S., Inc. v. Dept. of Justice, INS*, 48 F.Supp. 2d 22, 24–25 (D.D.C. 1999) (a petitioner must "quantify the time" an employee spends on managerial duties).  The amended job description failed to satisfy the regulation's requirements.

Grinin also challenges the AAO's determination that the management services contract that outsourced business support functions to HaloPolymer Trading's parent, OJSC HaloPolymer, further undermined the argument that Grinin qualified as an executive under the regulations.  The record shows that HaloPolymer Trading contracted with its parent to have it perform strategic planning, marketing, and planning services.  AR.663–75 (management services contract).  The AAO found that the management services contract indicated that "these management activities reside not with the petitioner, but with its overseas parent."  AR.9.  The delegation meant that Grinin did not perform the work.  Instead, there was significant overlap between the job duties Grinin asserted he did and what the management services agreement contracted away.  For example, the revised job description submitted in response to the request for evidence indicated that Grinin supervised the accounting department in its daily activities, but the management services contract delegated at least part of that role to the parent company.  AR.675, 737.  And while the job descriptions indicated that Grinin would be creating long-term goals "in consultation with" the "head company," the management services contract delegated "strategic planning services" to the parent company.  AR.664, 737.

Grinin argues that his high-dollar sales should not weigh against a finding that he was engaged primarily in executive tasks.  He asserts that this type of sales activity is "normal" practice for executives, but he provides no support for that proposition.  *Matter of Obaigbena*, 19 I&N Dec.

13

at 534 (the assertions of counsel do not constitute evidence).  The only evidence provided to the AAO showed that Grinin was primarily engaged in sales, which is not an executive duty under the statute.  8 U.S.C. § 1101(a)(44)(B).  There is substantial evidence to support the AAO's determination that Grinin's salesman role weighed against finding that he was primarily performing executive functions and was relieved of other, nonqualifying duties.

The AAO found that inconsistencies in the organization charts showing how many people were working for Grinin further undercut finding that he was primarily acting in an executive capacity.  The organization chart submitted with the original petition was labeled "Current structure as of 2013."  AR.481.  It listed the departments as accounting, marketing, and administration.  *Id.* Two departments, accounting and administration, consisted entirely of independent contractors.  *Id.* The marketing department listed Anton Spirov as the  manager and Gary Murray as "sales staff," AR.481, but Spirov and Murray were both listed as "sales managers" in other parts of the record. AR.697.  This rebuts Grinin's argument that "nothing in the administrative record [] shows that plaintiff's former employer ever claimed Mr. Murray and Mr. Spirov held the same title."  (Docket Entry No. 20 at 30).  By the time the petition was filed, neither Spirov nor Murray still worked at HaloPolymer Trading.  The petition, the briefs filed in this court, and the oral argument on the cross-motions all failed to explain why the submitted organization chart included terminated employees, or why their duties were inconsistently described.  The brief accompanying the initial petition filing listed Babloo Sharma as a technical-service manager and Richard Prantl as a national business-development manager.  AR.129.  Neither Sharma nor Prantl, nor their respective positions, were in the organization chart submitted with the original petition, but they were referred to as HaloPolymer Trading employees in the brief accompanying the petition.  *Compare* AR.129 *with* AR.481.  This

inconsistency is also unexplained.

A second organization chart submitted in response to the request for evidence, labeled "Current structure as of 2014," showed four departments—technical, accounting, marketing, and administration.  AR.751.  The technical department consisted of Sharma, the technical-services manager, but he no longer worked at the company.  *Id.*  The accounting and administration departments, as in the first chart, consisted of independent contractors.  AR.751, 481.  The revised chart showed the marketing department consisting solely of Prantl as the national business-development manager, who worked with a contractor for "marketing in Texas/Louisiana/Oklahoma."  AR.751.  Given these unexplained inconsistencies in staffing and job titles, the AAO did not err in finding that the petition did not provide reliable, probative evidence that Grinin was relieved of day-to-day activities so as to primarily operate in an executive capacity.

Grinin argues that the AAO erred by faulting him for not fulfilling some of the job duties included in the description Sook Cha, HaloPolymer Trading's interim corporate secretary, submitted in 2012 with the first L-1A visa application.  That job description "provided little information beyond paraphrasing the regulatory language."  AR.9.  It also indicated that Grinin would hire a general manager and an administrative manager during his first year with the company.  AR.571–72.  The AAO noted that when the petition was filed, Grinin had hired no one in either position.  AR.9.

Although some discrepancies in a visa petition are permissible, numerous discrepancies can raise significant credibility concerns.  *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 694 (9th Cir. 2003).  The AAO found those concerns present in this record and found that they were not addressed or resolved.  The AAO did not err in considering the unexplained discrepancies and inconsistencies in evaluating the petition.  Grinin's argument essentially presents a different

interpretation of the administrative record.  This is not a proper or sufficient basis for reversal.  Instead, agency action is arbitrary and capricious "only when it is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *See Wilson*, 991 F.2d at 1215.  That standard is not satisfied here.  The AAO's order is affirmed.

## III.   Conclusion

This court grants the government's motion for summary judgment, (Docket Entry No. 25), and denies Grinin's cross-motion for summary judgment, (Docket Entry No. 18).  Final judgment is entered by separate order.

SIGNED on December 15, 2016, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge